In the next case is Aspen American Insurance Company v. Landstar Ranger. Robert Borak is here for Appellant Aspen and John Marchione is here for Landstar. And once you're situated, Mr. Borak, you may begin. Thank you, Your Honors. May it please the Court. Thank you for allowing me to speak here today on what I see as a very important issue. At this time, there are, as you know, supply chain issues. There's also rampant theft of cargo throughout the country. And a large portion of it, ironically, happens right here in Miami. A lot of theft occurs all over the country and winds up being sold out of the back of a truck or back of a warehouse here in Miami. At the forefront of this are the transportation brokers. They are, in essence, the gatekeepers. They are tasked with finding a carrier, a motor carrier, to transport the cargo from the shipper's facility to the Cantonese facility. That's it. That is their sole responsibility, is to locate and select a reputable carrier to transport the shipment. The statute at issue here, which is the FAAA, which I will just refer to as the statute for convenience, is a preemption statute which basically says that a state may or may not enact or enforce laws that would restrict the prices, routes, or services of a transportation broker. The statute was enacted not really, not at all, to focus on transportation brokers but on motor carriers. Let me ask you to talk about this for a second in your comments. Section 14501A1 has the words service, broker, and the phrase with respect to transportation of property. Let me ask you this. This was about the underlying contract here was about the transportation of property. It involved a broker and involved the service of that broker. Why doesn't that doom your argument? Before we get to the safety exception, why isn't your argument dead on arrival? Understood. The reason is because, as the Supreme Court said in Roe, whatever law, the statute that you're referring to has to have a significant impact on the services of the broker. Here there is no such thing. We are just enforcing a reasonable standard of care. There is no state law saying a heightened standard of care that they need to do X, Y, and Z. It's a reasonable standard of care that applies not just to transportation brokers but to everyone in the country. But Roe, I thought, said that preemption can occur under the statute even if the state law's effect on rates, services, or routes is quote-unquote only indirect. It could be only indirect, yes, but it still has to have more than just a peripheral effect on those routes. The statute at issue in Roe . . . What's the difference or the daylight between indirect and peripheral then? What it . . . and Roe addresses that. It's the significant impact on the routes, on the services. The purpose of the statute, as Roe sets forth, is that Congress did not want a state to basically impose its own governmental standards that would impact market forces. That is not happening here at all. All the state is doing, all states are doing, are just enforcing a reasonable standard of care. There is no . . . there is no impact to the services, the prices, the routes of a transportation broker. Well, how do you . . . I mean, you just used the word standard. Standards in the statute. I mean, I just don't understand the line that you're drawing there by saying that brokers must comply with this standard of care. I mean, just by the words we use, isn't that a standard, having the force and effect of It's a standard to provide the service, right? Yes. And, again . . . It has to be reasonable. It has to be reasonable and it has to . . . So why isn't it preempted? It's not preempted because it has no significant impact on the services themselves. What the . . . But it's the standard by which they have to provide the service. Yes. I mean, what if a state . . . what if the state rule for negligence was you must have extraordinarily good care, right? So not the care of a reasonable person, but the care of the best broker ever, right? That's the standard for negligence for brokers, wouldn't that . . . If it's . . . Okay. Respectfully, yes. If the state had a statute that had that in effect, absolutely it would be . . . Okay. Well, then how is this any different? The standard is different. The standard itself is different. But the fact that it's a standard, it's still a standard. Why don't we know what the standard is? Because all we are asking for a broker to do is just act reasonable, act in accordance of the standard of care. What a ruling against . . . what a ruling here upholding the motion to dismiss, upholding preemption would in essence do is say that there is no standard. It says that states can't provide a standard, right? That's what it says, if we were to say that. And the states are not providing a standard here. But they are. It's reasonableness, right? There's reasonableness, but the case law pretty much established . . . I'll tell you what the standard for a broker is. The case law has established it for decades. All they have to do is select a reputable carrier. That involves, one, confirming that they are who they are, and number two, confirming their operating authority and their safety rating as set forth by the Federal Motor Carrier Safety Administration. That's it. They don't have to select, they don't have to confirm insurance, they don't have to confirm the amount of coverage. All they need to do is confirm that the carrier that is bidding on the load actually exists and is licensed and has an operating authority in effect. That is the standard of care set by the courts. I don't understand why shippers just don't put it in the contract if the broker is liable if the cargo is stolen by a fraudulent carrier. Very good question, Your Honor. So for sophisticated brokers, for large brokers, that may be the case. They have contracts with large shippers. For the most part, what we're talking about are mom-and-pop brokers and asparagus farmers or someone who has a shipment that needs to go to Walmart that they sold. So they just contact these very small, non-asset-based brokers to arrange the shipment. The contract at issue is simply make the arrangement. But the case law is abundantly clear that the standard that is applicable to that contract is to select a reputable carrier. So if the contract just says, okay, you arrange the transport, the broker is not liable for cargo loss under the case law. So then why can't the shipper just sue the carrier through the Carmack Amendment? I agree. The shipper does have recourse against the carrier. However, in instances such as the instant case, there is no carrier because of what the broker failed to do to not only comply with a reasonable standard of care, but its own procedures, which it didn't have to have in place. And if the ruling goes through, is upheld today, they won't have to have any procedures in place. So under the way you answered Judge Brasher's question about the standard, we would hold that a negligence claim is not preempted, but that a strict liability claim is preempted. Okay. That would be fair. There's no strict liability for a broker. I know. I know. Other than a cat. Right. I know. I know. It's just a question. I know. Tell me how that differentiation works with the language of the provision. How can you eliminate strict liability claims through preemption, but not eliminate negligence claims through preemption? Because I mean, as a policy matter, I can understand your position because there may be no remedy available to someone like your client. The CARMAC amendment applies to carriers. You may be out of luck. So policy, I understand, but how do you fit your distinction into the language of the provision? Respectfully, I would say the Supreme Court addressed that they can't envision that Congress would not fashion a remedy. So as you said, the CARMAC provides for a strict liability against carriers. There is no, any cause of action against brokers. Brokers are not subject to CARMAC. The standard is for a negligent standard. They are not strictly liable. Strictly liable essentially would be a breach of contract action. And the case law is just crystal clear that a broker is not responsible for cargo loss unless it was negligent in its selection of the carrier. Okay. Can I ask you to address the safety exception because I'll just tell you, I think that's your stronger argument. What is, so let's assume that the negligent standard is a standard. There's an exception for safety. What's your argument on that? Again, going back to the gatekeeper function of the broker, which stands on the front lines basically selecting a carrier that they're going to put on the roads that could increase the theft, increase the risk of safety, impact the safety of the citizens of the state and any state. But to have no standard of care, for a state to not be able to protect its citizens, to limit theft, to limit crimes, I think that goes to the safety of the entire state, the entire country. And so the state, the statute reserves the ability of the state to do that. The state has the right to protect the health of its citizens and to limit crime in its state. Would vitiating the state's negligence standard, would that undermine the authority of the state to provide for safety? I think the state would have to enact specific statutes. In that case, the function of the negligence standard is that the broker just exercises reasonable care, just knows, okay, just confirm who this is to try to limit the cargo theft, which is running rampant throughout the state and throughout the country. It's like a stretch to try to connect motor vehicle safety with brokers hiring fraudulent carriers who steal cargo. Yes, Your Honor. And I understand and I agree. It doesn't have anything to do with motor vehicle safety. It does, Your Honor. Sorry. Making sure your vehicle is appropriate to drive on the roads of the state of Florida. It's a big difference than brokers hiring fraudulent carriers who steal cargo. I have a hard time understanding how that addresses safety. The state's authority to regulate motor vehicle safety. Can I respond? Yeah. Thank you. So the broker, again, is tasked with selecting the reputable carrier. And part of this very limited role is to confirm the operating authority and the safety record of the carrier. So they are the ones that are basically confirming as much as they can the safety of the vehicles at issue. If they don't have to do that, they could just select a carrier that has an unsatisfactory safety rating or an expired operating authority. So I believe it goes. Let's just say hypothetically, I mean, this case is about, I mean, you know, it's all argument at this point, but this case is about them, the broker selecting a carrier that then stole the goods. I mean, what would be your remedy if a broker selected a carrier that had, you know, it was one guy and he drives an 18-wheeler and he has like 75 DUIs and is high all the time? What would be your remedy for that? If that record is listed on the FMCSA website, which I don't think it is, then they failed to select a reputable carrier. Right. And so you would bring a negligence action like this one, right? Right. Yeah. So the thing that makes it so a broker doesn't do that, you know, get the, I'm thinking of, you know, a particularly disreputable carrier who is unsafe, the thing that makes it so they don't do that would be the liability, the potential liability of a negligence action like this one. Correct. Okay. Thank you. Thank you. And Mr. Borak, we'll hear from Mr. Marchione. Marchione? May it please the Court. John Marchione for Landstar Ranger. We're here on a matter of great importance to the transportation industry, supply chain and interstate commerce. Congress has been intentional in its governance of interstate transport and has expressly preserved the authority to regulate interstate transport to the federal government. Aspen is indeed trying to establish a state law standard to apply to brokers. They're trying to do the very thing that the subject statute, the F4A statute, seeks to preempt and shield against. What claims are available against a broker under federal or state law if we rule in your favor in this case? For a situation like this, the remedies of the shipper who has suffered cargo loss and damage are to file an action for relief under the Carmack Amendment against the carrier and they have, if they have a contract with the broker that they're doing business with, and I would say the overwhelming majority do, they may file an action, a routine breach of contract action, which is not preempted under the Walden's case. They may file a routine breach of contract action so long as the action is not enlarged by any state regulation or rule. Those are the remedies. If Congress wants to create additional remedies for an injured party or an injured shipper against brokers who they believe fall below a standard of care, Congress can establish a standard of care. If the cargo is stolen by an unknown fraudulent carrier, you can't make a claim under the Carmack Amendment against them, right? The wrongdoer is certainly subject to whatever. If they can find the wrongdoer, yes, they can make the claim against the wrongdoer. But yes, if they can't find the motor carrier, if there's no one to be found, then there's no one to be found. Which is what we have in this case. It is, but that is not a defense to federal preemption. There are certain exceptions to F4A. One of them is not a sympathetic set of facts. That this happened doesn't negate what Aspen is trying to do by its complaint, which is to establish a state set of, they're trying to establish state common law which would dictate how brokers who are subject to Florida law operate when they're vetting a motor carrier. That's the very thing the statute says. So I think you're right about that. How, if we were to hold that the statute preempts Florida's negligence standard, would that not undermine the safety regulatory of the state? Well, so you're talking about the safety exception. So the safety exception has a caveat or a qualifier. And the qualifier is with respect to motor vehicles. Right, yeah. So I mean, we would be saying with respect to motor vehicles, the negligence standard doesn't apply. Right? With respect to, you know, a broker who is, I mean, I'll just tell you, the caveat doesn't make a lot of sense to me. And let me explain why. And then I want to get your response to that. Because that is in the exception, right? We've got to be with respect to motor vehicles for the preemption provision to apply at all. Right? Well, I disagree with that. We have to be with respect to the transportation of property. Okay. The preemptive provision has that qualifier, whereas the safety exception, the qualifier is with respect to motor vehicles. And that's a big difference. A broker, what a broker does is hire the carrier. I mean, you heard Aspen arguing that that's the one job of the broker, and it is. It's the most important job. It's the most critical job that they do. They vet and hire the carrier. Under the definition of transportation in Chapter 49, arranging for transportation is part of the definition of transportation. So what the broker does is with respect to the transportation of property. So it falls into the preemptive provision. It does not, the broker does not select the motor vehicle. They select the motor carrier. There is a difference. If motor vehicle in the safety exception is equated with motor carrier, everything the broker does is related to the motor carrier. So the exception then entirely swallows the rule, and the word broker basically has no meaning in the statute, which obviously is not what Congress intended. Congress specifically put the word broker in the preemptive provision to prevent state re-regulation of a broker's services. The goal is for the market, it's for competitive forces to establish the standards by which the brokers operate, or Congress may do so itself if it wants to enact a standard for brokers to operate. The states may not, and that's very clear in the statute. This is a, at the lower court, Judge Davis was presented with a fairly straightforward set of facts. On a motion to dismiss, he clearly found that the situation fell right into the preemptive scope of the broad, this is a broad provision as defined by Roe, as defined by Morales. The situation fell right into the preemptive provision, and he was correct in ruling that the safety exception could not be extended to the point on, to equate motor carriers and motor vehicles when we're dealing with cargo claims. There is some case law, generally at the district court level, and perhaps out west in the Ninth Circuit, using the safety exception when we have bodily injury cases. This is not a bodily injury case. I take that point. I guess the problem I'm having with this, and I appreciate your argument on this, is that that seems to be looking at sort of what happened in the case instead of saying whether something is preempted, right? So I mean, the question I see here is, is a negligence claim, state law negligence claim against a broker preempted? And it seems like the answer to that question would have to be the same no matter what the underlying facts of the negligence are. I would agree with that, but we're not here on a bodily injury case, so I'm not sure that we need to deny that. Yeah, but I mean, if a negligence claim against a broker here, the argument is like my broker was negligent because they got a carrier that stole my stuff. In the bodily injury, it could be my broker was negligent because he hired somebody that ran everybody over. I mean, you could, it's the same claim. It's my broker was negligent because he hired somebody or appointed me to somebody that was very, very bad. Shouldn't we have to address it just on that? Just is the negligence claim preempted without looking at sort of the facts? Maybe the answer is no, I don't know. Well, so I think it's clear that the qualifier with respect to transportation of property intended to encompass cargo type claims. I mean, there's a specific reference to property. Yeah, so you've clearly got the preemption. I mean, I'm talking about the exception. Well, and I mean, again, if we're going to say that the safety exception applies in cargo situations, it is going to completely swallow the rule. The broker always acts with respect to motor carriers. The broker selects the motor carrier. It's what they do. If that is the case, I don't know how you, I couldn't think of a situation where something is not going to be pulled out of the preemptive scope by the safety exception because it will always be with respect to this false equivalency of motor vehicles and motor carriers. Well, I mean, a state regulation on the prices that can be charged, right? I mean, there's all sorts of things that states could say that brokers have to do that would be preempted, right? That have nothing to do with safety? I suppose, I mean, yes, if a state was going to regulate the specific, if they had a targeted statute. Or if they, like, created some Obamacare-like exchange for, you know, you post your rates there and people bid on it or something, right? That would be preempted. Perhaps that's true, but there is, I mean, that doesn't, none of that really negates the fact that this situation fits directly into the preemptive scope and the complaint that Aspen brings has nothing to do with safety. It has nothing to do with motor vehicles. And it simply just doesn't fall into the safety exception. So, but I mean, I just, and just, I mean, tell me if you disagree with this. It just seems like to get to that argument, like, look at their complaint, it doesn't have anything to do with safety. It doesn't have anything to do with motor vehicles. You have to look at the very specific facts of what they're alleging the negligence was and not just the negligence claim itself. Or is there a way, is there a way to, for you to make that argument where we don't have to look at the specific facts of what they're alleging the negligence was? Well, I mean, you do have to look at the specific facts because you need to make sure that it is related to prices, routes, and services. But generally speaking, any type of negligence claim brought for either cargo damage or for bodily injury against a broker is going to pertain to the broker's service because the you know, in the bodily injury context, the motor carrier caused the accident, right? So certainly that relates to the broker's service because the broker picked the motor carrier. With respect to cargo claim, it's the same thing. The cargo was damaged. Well, the broker picked the motor carrier. So certainly it falls into the service. So generally speaking, you know, I'll say I'm not sure you can fashion a negligence claim that doesn't impact the broker's service. But you do have to look at what's being alleged. I suppose there could be some type of common law claim brought that doesn't touch on prices, routes, or services. But these types of negligence claims, and again, here we're on a cargo claim. Cargo claims against a broker are with respect to the transportation of property and they fall right into F4A. And they really trigger the exact reason why F4A was enacted. Congress did not want states creating a haphazard patchwork of different standards of care. So if the complaint goes forward, Florida will, Florida common law will say how a broker can act reasonably in the selection of a carrier. Then there's a case in Idaho that says, well, we have a little bit different of what we find reasonable in that locality. And now brokers in that state have to do something else. And then you find a third state and it would be a different standard of care. Let me ask you this. So under the safety exception, we're just talking about the safety exception. If Florida adopted a rule and said brokers are not allowed to hire, I guess is the right word. Brokers are not allowed to hire or to connect or whatever. Brokers are not allowed to broke. Someone who has 17 DUIs and smokes marijuana on a regular basis, would that be preempted or would that fit under the safety exception? In that situation, I think, I mean, there's a better argument there that it is with respect to safety of motor vehicles because you're talking about a DUI, I think. Yeah. That's kind of what I'm saying. Someone who's very, very bad. That's not what we have here. Yeah, sure. But I mean, that's the problem I'm having just mentally with this is that if that's not preempted, which I think it wouldn't be preempted, that seems like what the safety exception is directed towards, then how is a negligence cause of action that imposes the same standard or a comparable standard, why would that be preempted if something like that isn't preempted? Like, what is it about the negligence standard? In the context of a cargo claim, the state's action is not with respect to safety or with respect to motor vehicles. What the state common law here would end up saying is, hey, broker, in order to properly vet your motor carrier, you need to do X, Y, and Z. And none of those things may be related to safety or the motor vehicle necessarily. So it's, I think there's some difference and I think that's why some of the cases in the bodily injury context, and again, you're looking at what happened in the case as opposed to just negligence generally. But in the bodily injury context, I kind of get why they would come around and say, okay, well, maybe these types of cases do fall into the safety exception. On the cargo side, and when you look at the case law throughout, there's not a lot of circuit level cases on this. There's really only the Ninth Circuit C.H. Robinson case. But when you look at the district court cases, on the cargo side, when you're looking at cases that genuinely discuss F4A preemption and not just Carmack preemption, as Aspen tries to argue in their brief, the cases that discuss F4A preemption in the context of a cargo claim, the majority of them pretty much decide that those types of claims against brokers are preempted. On the bodily injury side, it is a lot more scattered. It's hit and miss and it's kind of all over the place. And I can see why they're looking, I don't necessarily agree with it, but I can see why you tie bodily injury to safety, whereas when we're talking just about cargo, it's just not. All right. Thank you, counsel. Thank you. I appreciate it.  Mr. Borick, you preserve some time for rebuttal. Thank you. I wanted to briefly address two things. First, this is the first Circuit Court of Appeal to address this issue, whether there is preemption for cargo cases or cargo loss cases. The district courts, respectfully, are not in alignment. There are several cases that address specifically FAA preemption in the context of cargo loss and some have held that it is preempted and some have held that it is not. There are cases that are district court of Connecticut specifically on exactly these facts. But there are circuit court cases that address bodily injury negligence that they find are not preempted. And, Judge Brasher, I think you touched on this, that the standard that is being imposed, regardless whether it's bodily injury or cargo loss, the standard that the broker is being imposed upon is the same. It's the end result that is different here. But we're looking at selecting a reasonable carrier and part of that is FMCSA does list the accidents that a carrier has been involved in. It specifically lists those. But I understand Judge Brasher's point about looking at the category of cases, but it's not that this has preemptive sweeps so that a state can't regulate anything about a broker's existence, right? Correct. But if you had a state version of a Title VII statute, that would not relate to the service with respect to transportation of property, right? Correct. And you wouldn't say it's a claim, whether it's negligence or intent or whatever substantive standard the state has set. The way you would say it's not preempted is you would say that doesn't deal with respect to transportation of property. Is that right or wrong? Partly I would also address that it doesn't affect the services that a broker provides substantially with respect to the transportation. Agreed. I think that's a good gloss on it. I think that's right. But you have to look at what the claim is, right? Because a claim may not relate to the service of a broker with respect to transportation of property. If it doesn't, it's not preempted. And the Supreme Court said in Roe, that's an important qualifier with respect to transportation of property. So you've got to look and see what the claim is before you figure out whether it's the type of claim that might be preempted. What I'm suggesting is you can't just say all negligence claims are preempted. That's too broad because you can't tell whether a negligence claim is relating to the service of a broker for transportation of property without knowing what the negligence claim might or might not be. That's correct. But again, here we're talking about the standard that the broker is already using and has in place. The broker at issue in this case failed to comply with their own procedures, not the state's procedures. They had a list of qualifications that they needed, a list of steps that they needed to follow, and they ignored those. They specifically noticed they ignored them and then just did it anyway. And that is, that's not a state imposing their own law. It is. That is. Because there's no absence state law or a contract. You can't sue somebody for failing to follow their own internal procedures. There has to be something external that gives you the right to sue for that if it's not contractual in nature. And here, that's the font of state common law negligence. Right? Right. Which is just, again, a standard of care applied to all industries everywhere. And to rule otherwise, to allow brokers to do this, will hold them to no standard of care whatsoever. They don't have to have any protocols. They don't need to confirm a carrier. They don't need to confirm the safety rating of a carrier. They don't need to confirm DUIs or accidents or even the operating authority of the carrier. They would have to do nothing at all. So, I appreciate it. Thank you. And I would ask that the ruling below be reversed. All right. Thank you, counsel. Thank you. The court is in recess until 9 o'clock tomorrow morning.